# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 4:16-cr-16 |
| v. ) | |
| ) | Judge Travis R. McDonough |
| SHAUN EARL GIBSON ) | |
| ) | Magistrate Judge Susan K. Lee |
| ) | |

## ORDER

Before the Court is Defendant Shaun Earl Gibson's motion to suppress. (Doc. 13.) Magistrate Judge Susan K. Lee held an evidentiary hearing on the motion and filed a report and recommendation, recommending that the Court deny Defendant's motion to suppress. (Doc. 29.) Defendant timely objected to the report and recommendation. (Doc. 30.) The Government did not file a response to Defendant's objections. The Court has conducted a *de novo* review of the record as it relates to Defendant's objections, and for the reasons stated hereafter, will: (1) **ADOPT BY REFERENCE** the facts set out in the report and recommendation; (2) **SUSTAIN** Defendant's objections to the report and recommendation; (3) **REJECT** the legal conclusions in the report and recommendation; and (4) **GRANT** Defendant's motion to suppress.

## I. STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C). *De novo* review does not, however, require the district court to rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The magistrate judge, as the factfinder, has the opportunity to observe and to hear the witnesses and

to assess their demeanor, putting her in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). A magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

## II. BACKGROUND

On September 27, 2016, a grand jury returned a one-count indictment that charged Defendant with being a felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1). On December 13, 2016, Defendant filed a motion to suppress seeking suppression of two firearms seized from the home of Stephanie Cuff on March 24, 2016, and statements Defendant made to law enforcement officers about these firearms after law enforcement seized them. (Doc. 13.) In his motion, Defendant argues that law enforcement's search and its subsequent seizure of the firearms violated his rights guaranteed by the Fourth Amendment of the United States Constitution. (*Id.*)

On February 24, 2017, Magistrate Judge Lee held an evidentiary hearing on Defendant's motion to suppress. (*See* Doc. 22.) At the evidentiary hearing, Magistrate Judge Lee heard testimony from John Cooke and Jeff Goodrich, patrol officers for the Shelbyville Police Department. Defendant did not present any witnesses at the suppression hearing. The parties also submitted post-hearing briefing regarding Defendant's motion. (Docs. 25–28.)

On April 10, 2017, Magistrate Judge Lee entered her report and recommendation, recommending that the Court deny Defendant's motion to suppress. (Doc. 29.) On April 24, 2017, Defendant filed objections to the report and recommendation. (Doc. 30.) Defendant did not object to the basic facts outlined in Magistrate Judge Lee's report and recommendation, but

2

did object to the findings and legal conclusions related to those facts. The Government did not file a response to Defendant's objections. After reviewing the record before the Court and finding the facts to be consistent with Magistrate Judge Lee's report and recommendation, the Court **ADOPTS BY REFERENCE** the facts set out in the report and recommendation. (Doc. 29, at 2–4); *see, e.g.*, *United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2013). Defendant's objections to Magistrate Judge Lee's report and recommendation are now ripe for review.

## III. ANALYSIS

### A. *Expectation of Privacy*

In her report and recommendation, Magistrate Judge Lee found that Defendant failed to meet his burden to prove by a preponderance of the evidence that he had a meaningful connection to Cuff's residence such that he had a reasonable expectation of privacy in a closed, but unlocked, metal box that Cuff identified as belonging to Defendant. Defendant objects to this finding, arguing that Officer Cooke's testimony at the suppression hearing demonstrates that Defendant was an overnight guest and, thus, possessed a reasonable expectation of privacy in the unopened metal box.

As to the circumstances surrounding Defendant's presence at Cuff's residence, Magistrate Judge Lee found that Cuff's recorded statements taken by an audio recorder on Cooke's belt at the time of the underlying incident conflicted with Cooke's testimony at the suppression hearing regarding his recollection of their conversation. (*See* Doc. 29, at 12–14.) Although Cooke testified that Cuff told him Defendant had been at the residence for "a couple of days," including nights, Magistrate Judge Lee noted that the recorded conversation between Cooke and Cuff at the time of the underlying incident suggested that Defendant may have

arrived at Cuff's residence that day. (*Id*.) Accordingly, Magistrate Judge Lee concluded that Cooke's testimony at the suppression hearing "falls short of" proving that Defendant was an overnight guest "by a preponderance of the evidence." (*Id*. at 14.)

The Court disagrees with Magistrate Judge Lee's conclusion that Defendant failed to prove by a preponderance of the evidence that he was an overnight guest who possessed a reasonable expectation of privacy in the item or area searched. Although Cooke testified that he could not recall how long Cuff said Defendant had been at her residence, he also testified that Cuff told him Defendant had been there a couple of days, including nights:

> Q: You indicated that Ms. Cuff told you Mr. Gibson had been there for a few days?
>
> A: A couple or a few days, something along those lines.
>
> Q: All right. And that would include nights, too. Right?
>
> A: Yes.

(Doc. 24, at 52.) Cooke also testified that Cuff told him Defendant "got here a few days ago":

> Q: And did you continue speaking with Ms. Cuff until your back-up arrived or –
>
> A: Yes. Me and Ms. Cuff just sort of – she didn't want Mr. Gibson to hear, so she was being quiet and sort of glancing over at the door. She was telling me that *he just got here a few days ago*, a little while ago, I don't recall how long and that she, that she just wants him gone.

(*Id*. at 15 (emphasis added).)

Cooke's testimony that Cuff told him Defendant had been at her residence for "a couple of days" does not necessarily conflict with his other testimony at the suppression hearing or with Cuff's recorded statements taken by an audio recorder on Cooke's belt at the time of the underlying incident. Cooke's testimony that Cuff told him that Defendant did not live there and that Defendant "just showed up" is reconcilable with Defendant being present at Cuff's residence

4

for a couple of days. (*See id.* at 49–50.) Similarly, Cuff's recorded statements that Defendant "just kind of showed up here and flipped out," that she and Defendant "haven't been together for awhile," and that Defendant "had been gone for two months" are not inconsistent with Defendant being at her residence "for a couple of days." (*Id.* at 50, 52; Doc. 27, at 1, 4.) Having no reason to discredit Cooke's testimony that Cuff told him Defendant had been at her residence for "a couple of days," including nights, the Court finds that Defendant has met his burden to prove by a preponderance of the evidence that he was an overnight guest at Cuff's residence. As such, Defendant possessed both an actual and objectively reasonable expectation of privacy in the unopened metal box he left there.[1] *Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990) (a person's "status as an overnight guest [in someone else's home] is alone enough to show that he had a reasonable expectation of privacy in the home that society is prepared to recognize as reasonable."); *United States v. Washington*, 573 F.3d 279, 283 (6th Cir. 2009) ("The Sixth Circuit has generously construed the Fourth Amendment as protecting nearly all overnight

---

[1] Additionally, the Government conceded that the testimony elicited at the suppression hearing was that Defendant stayed at the Cuff's residence for at least a couple of days:

| | |
|---|---|
| THE COURT: | Okay. So, then I think that as I understand what the government is saying is that the issues are was there a reasonable expectation for a box left in the house where he was – the only evidence before me is that he was the overnight guest for three days. |
| MS. BAY: | Two days I think was the evidence or a couple of days. |
| THE COURT: | Two to three days. Couple of days, couple means more than one thing, so. |
| MS. BAY: | Right. |

(Doc. 24, at 70.)

5

guests. . . .").

### B. Actual and Apparent Authority

While it is undisputed that the officers had authority to search Cuff's residence based on her consent, the Court finds that Cuff did not have actual or apparent authority to consent to the officers' search of the unopened metal box because Cuff specifically told officers the box belonged to Defendant. "[W]hen the government seeks to justify a warrantless search by proof of voluntary consent, in the absence of proof that consent was given by the defendant, it 'may show that permission to search was obtained from a third party who possessed common authority or other sufficient relationship to the premises or effects sought to be inspected.'" *United States v. Waller*, 426 F.3d 838, 845 (6th Cir. 2005) (quoting *United States v. Matlock*, 415 U.S. 164, 171–72 (1974)). "[C]ommon authority rests 'on *mutual use* of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.'" *Id.* (quoting *Matlock*, 415 U.S. at 171, n.7). "On this basis, a resident's consent to search his home is not necessarily consent to search a closed object within the home." *Id.* "A valid consent to search the closed container must come from one who has common authority over the effects sought to be inspected, one who has mutual use of the property, and one who generally has joint access or control for most purposes." *Id.*

Similarly, the government can justify a warrantless search based on the consent of a third party, "where the officers conducting the search 'reasonably (though erroneously) believe that the person who has consented' to the search had the authority to do so." *United States v. Taylor*, 600 F.3d 678, 681 (6th Cir. 2010) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990)).

6

"The government bears the burden of establishing the effectiveness of a third party's consent." *Id.*

In this case, Cooke testified, and the recorded audio confirms, that after the officers located the metal box under the dresser, but before they opened it, Cuff stated: "that's his, I've seen that box before."[2] (Doc. 24, at 30, 44–45; Doc. 27, at 4.) This statement alone necessarily dispelled the officers' asserted notion that Cuff had the actual authority to consent to the search of the box. Similarly, the evidence does not support the claim the officers reasonably believed Cuff had apparent authority to consent to the search. Accordingly, the Government has failed to prove by a preponderance of the evidence that they had valid consent to search the unopened metal box left at Cuff's residence by Defendant.

### C. *Inevitable Discovery*

In its post-hearing brief, the Government argues that the inevitable discovery doctrine also justifies the officers' warrantless search, because Defendant agreed to "a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole Officer or law enforcement officer, at any time" as part of his probation conditions. (Doc. 26, at 7–8; *see also* Ex. 5, Feb. 14, 2017, Suppress Hr'g.) "The inevitable discovery doctrine, an exception to the exclusionary rule, allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995). "[T]he inevitable discovery exception to the exclusionary rule applies when the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would

---

[2] Officer Goodrich testified at the suppression hearing that he could not remember whether Cuff said anything regarding who the box belonged to. (Doc. 24, at 61–62.)

7

have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered." *Id.* "[T]he doctrine applies where the facts indicate that the officers inevitably would have discovered and seized the tainted evidence by following 'routine procedures.'" *United States v. Pritchett*, 749 F.3d 417, 437 (6th Cir. 2014) (quoting *United States v. Garcia*, 496 F.3d 495, 506 (6th Cir.2007)).

In this case, the Government has failed to prove by a preponderance of the evidence that officers would have inevitably discovered and seized the firearms in the metal box through lawful means. First, there is no evidence in the record of an independent, untainted investigation that would have inevitably uncovered the same evidence. Second, there is no evidence in the record indicating that the officers would have learned that Defendant agreed to warrantless searches as a condition to his probation by following routine procedures. To the contrary, the testimony elicited from Cooke at the suppression hearing demonstrates that, even after following routine procedures, he never tried to obtain a copy of Defendant's probation conditions and he did not know if Defendant had agreed to warrantless searches as a condition of his probation.

> Q: Officer Cooke, when did you become aware that Mr. Gibson was on probation?
>
> A: That's when we -- when we book them into the commissioner's office, that's the questions that they ask.
>
> Q: Okay. So, after you searched the house, you went to the jail and you participated in booking him in. Is that right?
>
> A: No, ma'am.
>
> Q: When did you book him in?
>
> A: Officer Peacock booked him in. That's when we were told that he was on probation.
>
> Q: When were you told -- where were you when you were told?
>
> A: I was probably back at the police department.

Q: Okay.

A: After the fact.

Q: Okay. So, you learned after the, after the search --

A: Yes, ma'am.

Q: -- that Mr. Gibson was on probation?

A: Yes, ma'am.

Q: Did you obtain a copy, just when you learned that he was on probation, did you get a copy of his probation folder?

A: No, ma'am.

Q: When did you ever -- did you ever ask to get a copy of his probation file?

A: No, ma'am.

Q: Did you have a copy of any kind of order of probation that told you what the terms of his probation were?

A: No, ma'am.

Q: When did -- when, if ever, did you receive that?

A: I never did receive the copy of his probation.

Q: Okay. So, when did you learn that a condition of his probation was that he agreed to be searched?

A: That's just the standard that we, that we go by, that usually state probation that they relinquish their rights to search.

Q: Okay. So, that's the usual standard that you go by?

A: Well, no, that's usually what it is.

Q: Okay. Do you know if that was what it was in Mr. Gibson's case?

A: No, ma'am.

Q: All right. And so, certainly, at the time you were at Ms. Cuff's house, you did not know that information either that he was on probation or that there was an order regarding searches as a condition of his probation?

A: No, I did not.

9

(Doc. 24, at 42–44.)

Without any evidence in the record indicating that officers would have discovered that Defendant agreed to warrantless searches through routine procedures, there is insufficient evidence in the record to find that the Government has proven by a preponderance of the evidence that the firearms would have been inevitably discovered through lawful means. Accordingly, the inevitable discovery doctrine is inapplicable and does not otherwise excuse the officers' unconstitutional warrantless search of the metal box. *See also United States v. Caseres*, 533 F.3d 1064, 1075–76 (9th Cir. 2008) (holding that a condition in a probation order validates an unlawful search only if the police had advance knowledge that the search condition applied before they conducted the search).

### D. *Defendant's Statements to Law Enforcement After the Warrantless Search*

Having concluded that the officers' warrantless search of Defendant's metal box violated his rights under the Fourth Amendment of the United States Constitution, the Court finds that Defendant's statements subsequently given to law enforcement officers are tainted by the illegal search and, therefore, must also be suppressed. *See United States v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010) (explaining that the "fruit of the poisonous tree" doctrine "bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure").[3]

## IV. CONCLUSION

For the reasons stated herein: (1) the Court **ADOPTS BY REFERENCE** the facts set

---

[3] The Court notes that the "fruit of the poisonous tree" doctrine does not mandate exclusion of evidence "when the connection between the [unconstitutional search] and the evidence has become so attenuated as to dissipate the taint." *Williams*, 615 F.3d at 668. In this case, the Government does not argue that the connection between the search and Defendant's subsequent statement to law enforcement is so attenuated as to dissipate the taint of the unconstitutional search; rather, the Government only argues that "because the search was lawful, the statement that came afterwards is also lawful." (Doc. 26, at 8.)

out in the report and recommendation (Doc. 29); (2) Defendant's objections to the report and recommendation (Doc. 30) are **SUSTAINED**; (3) the Court **REJECTS** the legal conclusions in the report and recommendation (Doc. 29); and (4) the Court **GRANTS** Defendant's motion to suppress (Doc. 13).

    **SO ORDERED**.

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**